UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

**DEREK TERRY**, on behalf of himself and all others similarly situated,

    Plaintiff,

vs.

**TMX FINANCE LLC,** a foreign limited liability company, and **TITLEMAX OF ILLINOIS, INC.**, a foreign corporation, and **DOES 1-10**,

    Defendants.

Case No. 1:13-cv-06156
Hon.

**COLLECTIVE/CLASS ACTION COMPLAINT**

## INTRODUCTION

1. This is a class and collective action brought by Plaintiff, Derek Terry ("Plaintiff" or "Terry"), on behalf of himself and all similarly situated current and former employees of Defendants, TMX Finance LLC, TitleMax of Illinois, Inc., and Does 1-10, to recover for Defendants' willful violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* Plaintiff also seeks to bring his claim for violation of the Illinois Minimum Wage Law ("IMWL"), 820 Ill. Comp. Stat. 105/1, as a state-wide class action pursuant to Fed. R. Civ. P. 23.

2. Plaintiff, and those similarly situated, were subjected to Defendants' policy and practice of failing to pay overtime at a rate of one and one-half times their regular rate for hours worked in excess of forty (40) hours during a workweek.

3. Specifically, Plaintiff complains that Defendants misclassified Plaintiff and all other members of the Class as salaried exempt employees, at all times in which they worked as

General Managers in Training ("GMIT") prior to January 2013. To remedy their damages, Plaintiff brings this action as a nation-wide collective action pursuant to 29 U.S.C. § 216(b) and a statewide class action pursuant to Fed. R. Civ. P. 23.

4. The individuals that Plaintiff seeks to represent in this action are current and former GMITs who were improperly classified by Defendants as salaried exempt employees prior to January 2013. Plaintiff contends that Defendants' improper classification resulted in the failure to properly compensate their GMITs with overtime pay as required under applicable federal and state laws.

5. Plaintiff seeks a declaration that his rights, and the rights of other Class members, were violated, an award of unpaid wages, an award of liquidated damages, and an award of attorneys' fees and costs to make them whole for damages suffered.

## JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq.*

7. This Court has jurisdiction over this FLSA Collective Action pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

8. Defendants' annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis. Defendants' employees engage in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

9. This Court has jurisdiction over Plaintiff's state law class claims pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). The aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are

believed to be in excess of 100 Class members, and this is a case in which more than two-thirds of the proposed Class members and Defendants are citizens of different states.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the actions and omissions giving rise to the claim pled in this Complaint substantially occurred in this District.

## **PARTIES**

11. Plaintiff, Derek Terry, is an individual who resides in Naperville, Illinois. Plaintiff worked for one or more of the Defendants in Illinois as a GMIT from August 2012 until March 2013, and has executed his consent to sue form, attached hereto as *Exhibit A*.

12. Defendant, TMX Finance LLC, is a Delaware corporation with its principal place of business located at 15 Bull Street, #200, Savannah, Georgia 31401.

13. TMX Finance LLC is a specialty finance company that originates and services automobile title loans through 1,108 title-lending stores in 12 states (as of March 31, 2013). The company operates 870 TitleMax stores, and 167 stores under the name TitleBucks. The Company also offers a second lien automobile product in Georgia and Florida, with operations conducted within 66 TitleMax stores under the EquityAuto Loan brand, and through 71 stand alone stores under the InstaLoan brand. The company admits that it is "subject to laws, regulations and supervision in each of the states in which it operates."[1]

14. TMX Finance LLC describes itself as follows:

We are a privately-owned automobile title-lending company with 1,108 company-owned stores in 12 states as of March 31, 2013. We serve individuals who generally have limited access to consumer credit from banks, thrift institutions, credit card lenders and other traditional sources of consumer credit. We provide our customers with access to loans secured by a lien on the customers' automobiles while allowing the customers to retain use of the vehicles during the term of the loans. As of March 31, 2013, we served more than 415,000 customers and had approximately $497.6

---

[1] TMX Finance LLC, Form 10-Q, Filed May 14, 2013, "Nature of Business", p. 6.

million in title loans receivable. We believe that we are the largest automobile title lender in the United States based on title loans receivable.[2]

15. Defendant, TitleMax of Illinois, Inc., is a wholly owned subsidiary of TMX Finance LLC. Like its parent company, TitleMax of Illinois is a Delaware corporation with its corporate headquarters located at 15 Bull Street, #200, Savannah, Georgia 31401.

16. TitleMax of Illinois is registered with the Illinois Secretary of State and maintains over fifty (50) brick-and-mortar stores throughout the state of Illinois.[3]

17. TitleMax of Illinois is engaged in the origination and servicing of automobile title loans. Specifically, TitleMax of Illinois offers individuals and small business owners access to funds through loans secured by a first and second lien on the customer's automobile(s).

18. The Doe Defendants in this matter are the entities and/or individuals that, together with the named Defendants, employed Plaintiff and members of the Class and are thus liable for the violations of the FLSA and possibly for violating other state wage and hour laws. Plaintiff will seek leave from this Court to amend this Complaint to include those claims should the factual record support doing so.

19. Unless otherwise specified, Plaintiff will refer to all Defendants collectively as "Defendants" or "TitleMax", and each allegation shall pertain to each Defendant.

20. At all relevant times, Defendants were Plaintiff's "employers," and Defendants were engaged in "interstate commerce" as defined in the FLSA.

**GENERAL ALLEGATIONS**

21. TitleMax employs several different types of workers, including but not limited to Customer Service Representatives, Assistant Store Managers, Store Managers, Manager Trainees,

---

[2] TMX Finance LLC, Form 10-Q, Filed May 14, 2013, "Company Overview", p. 20.

[3] *See* http://www.titlemax.biz/store-locator/illinois/ (last visited July 12, 2013).

General Managers, District Managers, Regional Managers, and other corporate employees.

22. As a pre-requisite to officially becoming a General Manager, TitleMax gives new or promoted employees the title of "General Managers in Training" ("GMIT") for a 60-day period and assigns them to work in a specific store with a specific General Manager. Throughout the 60-day period, the GMITs are supervised by the General Manager.

23. The job duties of a GMIT include: (a) working store hours of operation including Saturdays; (b) learning how to ensure that sales transactions, customer payments and collection activities are properly performed in accordance with the TitleMax's operations procedures and all applicable laws; (c) learning how to increase store profitability through customer relationship development, community involvement, marketing, soliciting new business sources, employee training and managing all store operating expenses; (d) learning how to coach, lead and develop all team members for the store to maximize their performance potential; (e) learning how to direct, prioritize, delegate and supervise the work of all store employees; (f) learning how to determine and/or approve loan values based off of a comprehensive vehicle appraisal; (g) learning how to interview and hire qualified candidates for position openings as well as train and retain current staff on company policies and operational procedures; (h) learning how to prepare and analyze daily, monthly and other company reports and communicate information necessary to various levels of management.

24. At the conclusion of the 60-day period, the GMITs are required to travel to Defendants' headquarters in Savannah, Georgia in order to take the "Stars Training Test." Upon successfully passing this test, the GMIT is deemed qualified to become a General Manager.

25. Plaintiff was hired by TitleMax in August 2012 as a General Manager, given the GMIT job title, and initially assigned to a TitleMax store in Naperville, Illinois. After spending

one month in this initial store, Plaintiff was transferred to a different store in Naperville, Illinois.

26. In October 2012 (at the conclusion of his first 60-days), Plaintiff traveled to Savannah and took the Stars Training Test. Plaintiff passed the test with the highest score among GMITs from the state of Illinois.

27. Despite his excellent test performance, TitleMax kept Plaintiff employed as a GMIT because there were supposedly no stores available for him as a General Manager. During the next several months, TitleMax transferred Plaintiff between different Illinois stores in St. Charles (one month), Plano (two months), and Elmwood Park (one month) until he left the company in March 2013.

28. Plaintiff never actually became a General Manager with TitleMax and held the GMIT job title for the duration of his employment.

29. Throughout his employment with TitleMax, Plaintiff was scheduled to work 50-hours per week; specifically, he was scheduled to work Monday through Friday, from 9:00 a.m. until 7:00 p.m. However, Plaintiff regularly worked more than 50 hours per week because he was required to (and regularly did) work past 7:00 p.m. if he was in the middle of processing a customer loan.

30. As a GMIT from August 2012 to March 2013, Plaintiff regularly worked in excess of forty (40) hours in a week (hereinafter referred to as "overtime hours") at the direction of the Defendants.

31. Throughout his employment with TitleMax, Plaintiff clocked in/out of the company's computer timekeeping software, Kronos. Thus, TitleMax has accurate records of the hours that Plaintiff actually worked.

32. From August 2012 until January 2013, Plaintiff was paid a base salary and also

received a fixed commission based on store profits.

33. As a GMIT, TitleMax classified Plaintiff as exempt and considered him ineligible to receive overtime compensation under federal and state law.

34. However, on January 10, 2013, TitleMax issued a company e-mail to its General Managers, stating:

> Please be advised that effective today all GMIT'S are non-exempt or hourly employees. Please make sure that they work 40 hour work weeks going forward. If they have been scheduled so for 48 hour work weeks, please make sure you revise your schedules to reflect 40 hours instead.[4]

[Defendants are in possession of that e-mail].

35. At the time Defendants changed the exemption status of the GMITs to hourly non-exempt, nothing changed about their job duties, responsibilities, or day-to-day activities.

36. By changing the exemption status of its GMITs to hourly non-exempt without any corresponding change in job duties, TitleMax has admitted that, at all times prior to January 2013, its GMITs were misclassified as salaried exempt employees and that they should have been paid as hourly non-exempt employees.

37. Despite changing the exemption status of its GMITs, TitleMax did not retroactively compensate its GMITs for overtime they worked prior to January 2013. These unpaid overtime hours add up to thousands of dollars per Class member.

## COLLECTIVE ACTION ALLEGATIONS

38. Plaintiff brings this action pursuant to the FLSA, 29 U.S.C. § 216(b) on his own behalf and on behalf of all similarly situated current and former GMITs of Defendants who are or were employed at any time in the last three years, who worked over 40 hours per week and were not paid overtime for hours worked over 40 in a workweek.

---

[4] Grammatical errors in original document.

39. Plaintiff does not bring this action on behalf of any executive, administrative, or professional employee exempt from coverage under the FLSA.

40. With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because, under 29 U.S.C. § 216(b), the GMITs described are "similarly situated" to Plaintiff. The class of employees on behalf of whom Plaintiff brings this collective action are similarly situated because: (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policy, or plan; and (c) their claims are based upon the same legal theories.

41. Plaintiff estimates that the collective Class, including both current and former GMITs over the relevant period, will include hundreds (and possibly over one thousand) members. The precise number of collective Class members should be readily available from a review of Defendants' personnel, scheduling, time and payroll records, and from input received from the collective Class members as part of the notice and "opt-in" process provided by 29 U.S.C. §216(b).

42. Plaintiff's and other potential Class members entitlement to overtime pay, except for amount, is identical and depends on one uniform factual question: prior to January 2013, did Defendants pay its GMITs overtime compensation for hours worked over forty (40) in a workweek?

43. Similarly, the classification status of the Class and Plaintiff involves an identical legal question: prior to January 2013, were Defendants' GMITs non-exempt employees such that Defendants owe them overtime compensation under the FLSA?

44. Plaintiff shares the same interests as the Class in that the outcome of this action will determine whether they are either exempt or non-exempt employees under the FLSA. Because the

facts in this case are similar, if not altogether identical, the factual assessment and legal standards lend themselves to a collective action.

## CLASS ACTION ALLEGATIONS

45. Plaintiffs also bring this action pursuant to Fed. R. Civ. P. 23 on behalf of a putative Class defined to include:

> All persons employed by TitleMax as a General Manager in Training in the state of Illinois who were classified as exempt from FLSA overtime requirements at any time in the past three years.

Plaintiff reserves the right to amend the putative Class definition as necessary.

46. Plaintiff shares the same interests as the putative Class and will be entitled under Illinois state law to unpaid overtime compensation, attorneys' fees, and costs and lost interest owed to them under nearly identical factual and legal standards as the remainder of the putative Class.

47. The putative Class meets the numerosity requirement of Rule 23(a)(1) because, during the relevant period, Defendants have employed numerous GMITs in approximately 50 locations throughout Illinois while subjecting them to working over forty (40) hours without being paid overtime compensation. The precise number of Class members should be readily available from a review of Defendants' personnel, scheduling, time and payroll records, and from input received from the putative Class members.

48. The putative Class meets the commonality requirement of Rule 23(a)(2) because, during the relevant period, Defendants engaged in a common course of conduct that violated the legal rights of Plaintiff and the Class. Any individual questions that Plaintiff's claims present will be far less central to this litigation than the numerous material questions of law and fact common to the Class, including but not limited to:

    a. whether Defendants maintained common policies or practices regarding the job duties of GMITs;

  b. the actual day-to-day job duties of GMITs;

  c. the information Defendants used to classify the GMITs as exempt employees;

  d. whether Illinois state law requires Defendants to pay overtime wages to Plaintiff and the putative Class members; and

  e. whether Defendants should be required to pay compensatory damages, attorneys' fees, and costs and interest for violating Illinois state law.

49. The status of all individuals similarly situated to Plaintiff raises an identical legal question: prior to January 2013, were Defendants' GMITs non-exempt employees such that Defendants owe them overtime compensation under Illinois state law?

50. The putative Class meets the typicality requirement of Rule 23(a)(3) because Plaintiff and the putative Class members were all employed by Defendants and performed their job duties without receiving overtime compensation owed for that work.

51. The Class meets the fair and adequate protection requirement of Rule 23(a)(4) because there is no apparent conflict of interest between Plaintiff and the putative Class members, and because Plaintiff's attorneys have successfully prosecuted many complex Class actions, including wage and hour class and collective actions, and will adequately represent the interests of Plaintiff and the putative Class members.

52. The putative class meets the predominance requirement of Rule 23(b)(3), because issues common to the Class predominate over any questions affecting only individual members, including but not limited to:

  a. whether Defendants, through their employment policies and practices, exercised control over the manner in which the Class worked;

  b. whether Defendants' GMITs were improperly classified as exempt employees; and

  c. whether Defendants calculated the GMITs compensation under the same formula in the same way.

53. The Class meets the superiority requirement of Rule 23(b)(3) because allowing the parties to resolve this controversy through a class action would permit a large number of similarly-situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender.

54. Given the material similarity of the Class members' claims, even if each Class member could afford to litigate a separate claim, this Court should not countenance or require the filing of thousands of identical actions. Individual litigation of the legal and factual issues raised by Defendants' conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a class action would permit the efficient supervision of the putative Class's claims, create significant economies of scale for the Court and the parties and result in a binding, uniform adjudication on all issues.

55. This class action can be efficiently and effectively managed by sending the same FLSA opt-in notice to all employees similarly situated and adding for the Illinois GMIT's within that group a separate opt-out notice pertaining to their rights under the Illinois state law.

## COUNT I
## VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq*.
## FAILURE TO PAY OVERTIME WAGES

56. Plaintiffs re-allege and incorporate all previous paragraphs herein.

57. Pursuant to the FLSA, 29 U.S.C. § 201, et seq., Plaintiff and all putative Class members are entitled to compensation at their regular rate for all hours actually worked.

58. 29 U.S.C. § 207(a)(1) provides as follows: "Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in

commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

59. The Defendants misclassified the Plaintiff and all similarly situated employees as exempt when in fact they were non-exempt. Neither Plaintiff nor the putative Class members qualify for exemptions enumerated at 29 U.S.C. § 213(a). Thus, they are not exempt.

60. By misclassifying the Plaintiff and similarly situated employees as exempt from overtime prior to January 2013, Defendants failed to pay Plaintiff and the putative Class members for hours worked over forty (40) hours in a week for that respective period.

61. Defendants' unlawful conduct has been widespread, repeated, and willful. Defendants knew or should have known that its policies and practices were unlawful and unfair.

## COUNT II
## VIOLATION OF THE IMWL ILCS 820 § 105, *et seq.*
## FAILURE TO PAY OVERTIME WAGES

62. Plaintiff re-alleges and incorporates all previous paragraphs herein.

63. IL ST CH 820 § 105/12 provides: "If any employee is paid by his employer less than the wage to which he is entitled under the provisions of this Act, the employee may recover in a civil action the amount of any such underpayments together with costs and such reasonable attorney's fees as may be allowed by the Court, and damages of 2% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid . . . ."

64. IL ST CH 820 § 105/4a states: "Except as otherwise provided in this Section, no employer shall employ any of his employees for a workweek of more than 40 hours unless such employee receives compensation for his employment in excess of the hours above specified at a

rate not less than 1 ½ times the regular rate at which he is employed."

65. Defendants misclassified Plaintiff and the putative Illinois Class members as exempt when in fact they were non-exempt. Neither Plaintiff nor any other putative Class member qualifies under Illinois overtime exemptions enumerated at IL ST CH 820 § 105/4a (2). Thus, they are not exempt.

66. By misclassifying the Plaintiff and the putative Illinois Class members as exempt from overtime from August 2012 to January 2013, Defendants failed to pay the Plaintiff and the putative Class members for hours worked over eight (8) hours in a workday and/or forty (40) hours in a week.

67. The applicable Statute of Limitations, IL ST CH 820 § 105/12, provides that, "[e]very such action shall be brought within 3 years from the date of the underpayment." The underpayments at issue occurred less than 3 years ago; therefore, the action was brought within the applicable statute of limitations.

68. Plaintiff demands, for himself and the putative Illinois Class members, that Defendants pay Plaintiff and the putative Class their regular hourly rate of pay for all hours worked in excess of forty (40) hours per week from August 2012 to January 2013. In addition, they demand attorney's fees, costs damages mandated under IL ST CH 820 § 105/12, and interest as provided by law.

69. At relevant times, in addition to the FLSA, the IMWL required Defendants to compensate Plaintiff and the putative Class members at one and one-half times their regular rate of pay for all hours worked in excess of eight (8) hours per day and/or forty (40) hours per week.

70. At all relevant times, Defendants suffered, permitted, and/or required Plaintiff and all putative Class members to work in excess of eight hours per day and/or forty hours per week, but were not paid overtime pay as required by Illinois law.

71. As a result of Defendants' unlawful acts, Plaintiff and the putative Class members were deprived of their rightfully earned overtime pay in amounts to be determined at trial.

72. Defendants' conduct violated the IMWL. Therefore, pursuant to 820 ILCS 105/12(a) Plaintiff and the putative Class members are entitled to recover damages for the unpaid wages and overtime wages for the three years prior to the filing of this suit, plus punitive damages in the amount of two percent (2%) per month of the amount of underpayment.

73. As a result of the foregoing conduct, Plaintiff seeks on behalf of himself and all members of the putative Class unpaid wages and overtime wages at the required legal rate for all of their working hours during the relevant time period plus all other damages, attorneys' fees and costs, restitution, penalties, injunctive relief, interest calculated at the highest legal rate, and all other relief allowed by law.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief:

    a. Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth above;

    b. Declaring that Defendant willfully violated its obligations under the FLSA and its attendant regulations as set forth above;

    e. Certifying this matter to proceed as a class action;

    f. Designating Sommers Schwartz, P.C. and Johnson Becker, PLLC as Lead Counsel for Plaintiff and the Class members on their Illinois Minimum Wage Law claim;

g. Awarding Plaintiff and the Class members all available compensatory damages and punitive damages, including, *inter alia*, all unpaid wages and lost interest owed by Defendant under the Illinois Minimum Wage Law;

h. Granting judgment in favor of Plaintiffs and against Defendant and awarding the lost overtime compensation calculated at the rate of one and one-half (1.5) of Plaintiffs' regular rate multiplied by all hours that Plaintiffs worked in excess of forty (40) hours per week for the past three years;

i. Awarding liquidated damages to Plaintiffs in an amount equal to the amount of unpaid overtime found owing to them;

j. Awarding reasonable attorney fees and costs incurred by Plaintiffs in filing this action;

k. Awarding pre- and post-judgment interest to Plaintiffs on these damages; and

l. Such further relief as this court deems appropriate.

Date: August 28, 2013

Respectfully Submitted,

s/ Peter J. Flowers
Peter J. Flowers (IL #06210847)
Meyers & Flowers, L.L.C.
225 West Wacker Drive, Suite 1515
Chicago, Illinois 60606
Phone: (630) 232-6333
Email: PJF@Meyers-Flowers.com
*Local Counsel for Plaintiffs*

Matthew L. Turner
*(Pending Admission Pro Hac Vice)*
MI Bar No. P48706
Jesse L. Young
*(Pending Admission Pro Hac Vice)*
MI Bar No. P72614
SOMMERS SCHWARTZ, P.C.
1 Towne Square, Suite 1700
Southfield, Michigan 48076
248-355-0300
mturner@sommerspc.com
jyoung@sommerspc.com

Timothy J. Becker
*(Pending Admission Pro Hac Vice)*
MN Bar No. 256663
Jacob R. Rusch
*(Pending Admission Pro Hac Vice)*
MN Bar No. 391892
JOHNSON BECKER, PLLC
33 South Sixth Street, Suite 4530
Minneapolis, Minnesota 55402
Telephone: (612) 436-1800
Facsimile: (612) 436-1801
tbecker@johnsonbecker.com
jrusch@johnsonbecker.com

*Trial Counsel for Plaintiffs*