UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

_____

**DEREK TERRY**, *et al.,* on behalf of himself and all others similarly situated,

        Plaintiffs,

vs.

**TMX FINANCE LLC,** a foreign limited liability company, and **TITLEMAX OF ILLINOIS, INC.**, a foreign corporation, and **DOES 1-10**,

        Defendants.

Case No. 1:13-cv-06156

_____

## PLAINTIFFS' RESPONSE TO TMX FINANCE LLC'S MOTION TO DISMISS

NOW COMES Plaintiffs, by and through their undersigned attorneys for their Response to the Motion to Dismiss filed by Defendant TMX FINANCE, LLC ("TMX FINANCE"), state as follows:

### FACTS

1. In its Motion to Dismiss, TMX Finance wholly ignores the jurisdictional allegations contained in the Second Amended Complaint ("SAC"); Exhibit B (letter offering employment to Dereck Terry *from TMX Finance*); Exhibit C (paystubs *from TMX Finance*); its public financial filings (SEC Form 10Q); its statutory requirement to register with the Illinois Department of Revenue as an

entity because it withholds state taxes; and jurisdiction as a joint employer under the Fair Labor Standards Act 29 U.S.C. §201, *et seq.* ("FLSA").

2. In TMX Finance's Motion to Dismiss, TMX Finance argues that it is not subject to the general or personal jurisdiction of this Court because it lacks "continuous and systematic" contacts with Illinois and that it did not "purposely [direct] its activities at Plaintiff" in Illinois. This contention lacks merit. Specifically, it was *TMX Finance* that *offered* Terry employment *in Illinois*. *See* SAC. at Ex. B. It was *TMX Finance* is the entity that actually *paid* Terry for his work. *Id.* at Ex. C. And, it was *TMX Finance* that directed the FLSA violation by refusing to pay him properly for the overtime he worked. *Id.* It can hardly be argued—at least at this stage of the proceedings—that allegations an entity *offered* a plaintiff employment, *paid* the employee for his work, and directed the very FLSA violation that is central to the SAC, fail to identify sufficient contacts so as to establish general jurisdiction.

**I.    PLAINTIFFS ALLEGED SUFFICIENT MINIMUM CONTACTS TO ESTABLISH GENERAL AND PERSONAL JURISDICTION OVER TMX FINANCE.**

3. TMX Finance has numerous contacts with Illinois and was directly involved in the FLSA violation identified in the SAC. Specifically, the SAC states the following:

   a. Plaintiff was hired by TitleMax[1] in August 2012 as a [General Manager in Training ("GMIT")]. As such, TitleMax classified Plaintiff as a non-exempt employee for FLSA Purposes. *See* August 7, 2012 offer letter, attached as *Exhibit B*. *See* SAC at ¶ 26.

---

[1] The SAC defined "TitleMax" as ***both*** TitleMax of Illinois, Inc. and TMX Finance, LLC.

b. *Exhibit B*, in no less than *three* separate clauses states that TMX Finance was Terry's employer, noting:

I am pleased to confirm our offer of employment to join *TMX Finance, LLC (the "Company")*. . .

You will be eligible to participate in the *Company sponsored TMX Finance* group benefit plan…

[I] look forward to you becoming part of our *TMX Finance, LLC* team…

*See* SAC at Ex. B (emphasis supplied).

c. TMX Finance's paystub shows that Plaintiff's regular hourly rate of pay was at least $14.42 . . . Indeed, this regular hourly rate is expressly identified on Plaintiff's paystubs as his hourly rate. *Exhibit C*. Specifically, *Exhibit C*, in relevant part, provides:



*See* SAC at Ex. C.

d. Paragraph 13 of the SAC cites TMX Finance LLC's, Form 10-Q. The 10-Q, in relevant part, provides that, "TMX Finance LLC and affiliates (collectively, unless context indicates otherwise, the 'Company') . . . The

3

Company *is subject to the laws, regulations, and supervision* in each state in which it operates." *Id.* at ¶¶ 13, 14 and fn. 2 (emphasis supplied).

## II. TMX FINANCE MUST BE REGISTERED WITH THE ILLINOIS DEPARTMENT OF REVENUE BECAUSE IT WITHHOLDS STATE TAXES.

4. Exhibit C (Terry's Pay-stub) establishes that TMX Finance withheld Illinois state income tax from Terry's pay checks. *See* SAC at Ex. C. As a result, TMX Finance—the entity issuing the check—is required to register with the Illinois Department of Revenue. *See* IL. Dept. of Rev., Publication 130 at p. 3 (March 2013). http://www.revenue.state.il.us/Publications/Pubs/Pub-130.pdf. Put another way, TMX Finance is *regulated by* the Department of Revenue *because* it conducts business in Illinois.

## ARGUMENT

## III. TMX FINANCE SUBJECTED ITSELF TO THE JUDRISDICTION OF THIS COURT.

5. "In reviewing a motion to dismiss for lack of personal jurisdiction, the Court accepts all well-pleaded factual allegations in the [complaint] as true unless controverted by affidavits outside the pleadings, which the Court may also consider." *Adams v. Raintree Vacation Exchange, LLC*, No. 10 C 3264, 2011 WL 1626561, at *3 (N.D.Ill. Apr. 28, 2011) (citations omitted).[2] Personal jurisdiction is governed by the law of the forum state…" *Tamburo v. Dworkin*, 601 F.3d 693,

---

[2] Here, TMX Finance failed to supply any Affidavits supporting its contention that it does not conduct business in the State of Illinois.

4

700 (7th Cir.2010) (citing *Citadel Group Ltd. v. Washington Regional Med. Ctr.*, 536 F.3d 757, 760 (7th Cir.2008)). Illinois's long-arm statute "permits the exercise of jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause." *Id.*; *see also Illinois v. Hemi Group LLC*, 622 F.3d 754, 756 (7th Cir.2010) (quoting 735 ILCS 5/2–209(c)). To determine the propriety and scope of personal jurisdiction over TMX Finance, this Court must look to the nature of the company's contacts with Illinois. *Nehmelman v. Penn. Nat. Gamming, Inc.*, 790 F.Supp.2d 787, 800 (E.D. Ill. 2011).

### A. *TMX Finance is Subject to General Personal Jurisdiction*.

6. General jurisdiction exists where the defendant maintains "continuous and systematic" contacts with the state. *Id.* (citing *International Shoe Co. v. State of Washington*, 326 U.S. 310 (1945)). If general jurisdiction does not apply, a defendant may be subject to personal jurisdiction where: "(1) the defendant has purposely directed his activities at the forum state or purposely availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendants forum-related activities." *Id.* (*citation omitted*).

7. The SAC clearly provides sufficient factual allegation to establish TMX Finance maintained "continuous and systematic" contacts with the State of Illinois—i.e., that it is subject to this Court's general personal jurisdiction. Specifically, TMX Finance was the company that offered Terry—an Illinois resident—a job. *See Offer Letter*, attached to SAC as Ex. B. In that letter, TMX Finance identified the key terms of Terry's employment including his compensation and entitlement to

5

      participation in TMX Finance's company benefits. *Id. Nothing* in the Offer Letter has *any* reference to TitleMax of Illinois. *Id.* Similarly, after Terry started working for Defendants, it was TMX Finance—as opposed to TitleMax of Illinois—who paid him. *See Supra* at p. 3. In short, TMX Finance "continuously and systematically" made contacts with Illinois by originating job offers and paying Illinois employees through TMX Finance.

8. If hiring and paying Illinois employees is somehow insufficient to establish general jurisdiction, this Court may infer TMX Finance is currently being regulated by the Illinois Department of Revenue. A company that is subject to a state's regulatory scheme maintains sufficient contacts with the forum state so as to establish personal jurisdiction. *See e.g. Abbott Labs v. Mylan Pharmaceuticals, Inc.*, No. 05-6561, 2006 WL 850916, at *5 (N.D.Ill. Mar. 28, 2006) ("Although [the defendant's] licenses come from an Illinois regulatory agency, and do not automatically establish general jurisdiction, they do represent an ongoing contact with the state of Illinois, and support an inference that [the defendant] intended to do business within the state.") Specifically, Terry's pay-check indicates that TMX Finance—the entity that paid him—withheld Illinois State taxes. In order to do so it had to register with the Illinois Department of Revenue to withhold any applicable Illinois taxes. Lastly, TMX Finance admitted that it is subject to the laws of Illinois and every other state where it does business in its own Securities and Exchange Commission's Form 10-Q filing. *See supra* at p. 3. Simply put, general jurisdiction exists.

6

> **B.     As a Joint Employer, TMX Finance has Sufficient Contacts with Illinois to Establish Personal Jurisdiction.**

9.  TMX Finance is also subject to personal jurisdiction because it is a "joint employer" with TitleMax of Illinois and caused Plaintiffs harm by not properly paying them under the FLSA and the Illinois Minimum Wage Law.  The Wage and Hour Administrator of the Department of Labor established that a joint employment relationship exists where:

    (1)   there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees; or

    (2)   *one employer is acting directly or indirectly in the interest of the other employer* (or employers) in relation to the employee; or

    (3)   *the employers are not completely disassociated* with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

    *See Karr v. Strong Detective Agency, Inc., a Div. of Kane Services*, 787 F.2d 1205, 1208 (7th Cir. 2002), citing 29 C.F.R. § 791.2(b); *Villareal v. El Chile, Inc.*, 776 F.Supp.2d 778, 795 (N.D. Ill. 2011); *McLaughlin v. Lunde Truck Sales, Inc.*, 714 F.Supp. 920, 925 (N.D. Ill.) (emphasis added).  TMX Finance only argument that it is not a joint employer with TitleMax of Illinois is it exclusive reliance on traditional notions of corporate liability—i.e. that a parent cannot be held liable simply given its subsidiary is sued.  TMX Finance's position, however, demonstrates a fundamental misunderstanding of the joint employer doctrine in the context of an FLSA claim.  Specifically, "because we deal with a statutory

construction of the FLSA, our determination of ... status is not limited by the previous common law notion of 'joint employer', and we need to give this concept an expansive interpretation in order to effectuate Congress's remedial intent in enacting the FLSA." *See McLaughlin v. Lunde Truck Sales, Inc.*, 714 F.Supp. 920, 923 (N.D. Ill. 1989) (*citing Karr v. Strong Detective Agency, Inc., a Div. of Kane Services*, 787 F.2d 1205, 1207 (7th Cir. 2002)). A corporation which exercised control over employees at a site, and a second corporation which had all of the employees *on its payroll* and directed certain of them to work at the first corporation's site were "joint employers" for purposes of the FLSA. *See McLaughlin,* 714 F.Supp. at 925.

10. Here, TMX Finance paid Terry while he worked at three different TitleMax of Illinois' locations. *See* SAC at ¶¶ 26-29 & Exs. B & C. TMX Finance's paying wages to Terry while he worked at TitleMax locations creates a situation where one employer (TMX Finance) is paying for an employee that is working for another employer (TitleMax of Illinois). *See Id.* At a minimum this shows that Terry is not disassociated from either TMX Finance or TitleMax of Illinois. Applying the "joint employer" definition broadly and the factors in *Karr* to these allegations establish that TMX Finance is a joint employer with TitleMax of Illinois under the FLSA and thus, subject to the personal jurisdiction of this Court. *See Bishop v. Consolidated Natural Gas, Inc.*, No. 99-1363, 2000 WL 6263, at *2-3 (E.D. La. Jan. 5, 2000) (noting that "specific jurisdiction would be triggered if [the moving defendant] were a joint employer and played an integral role in

denying [the plaintiff] the promotional opportunity at issue in this employment discrimination lawsuit")

11. If this Court determines that the above is not enough to establish jurisdiction, Plaintiff is entitled to and requests the opportunity to conduct limited jurisdictional discovery and amend the complaint. *See Trading Technologies Inter., Inc. v. BCG Partners, Inc.*, No. 10-715, *et al.*, 2011 WL 1220013 *5 (N.D. Ill. March 28, 2011) (concluding that plaintiff was entitled to jurisdictional discovery where a holding company was receiving benefits of the sales patent infringing product from its subsidiaries); *United Wholesale LLC v. Traffic Jam Events*, No. 11-2637, 2012 WL 1988273 (N.D. Ill. June 4, 2012) (limited jurisdictional discovery allowed over objection that jurisdiction was not properly pleaded in the complaint.). Accordingly, to the extent this Court is inclined to grant Defendant's motion, it should afford Plaintiff the opportunity to conduct discovery so as to establish the joint employer status between TMX Finance and Title Max of Illinois.

WHEREFORE, Plaintiff respectfully requests that TMX Finance's Motion to Dismiss be denied in its entirety.

Dated: January 3, 2014

Respectfully Submitted,

s/Timothy J. Becker
Timothy J. Becker
MN Bar No. 256663
David Grounds
*(Pending Admission Pro Hac Vice)*
MN Bar No. 285742
JOHNSON BECKER, PLLC
33 South Sixth Street, Suite 4530
Minneapolis, Minnesota 55402
Telephone: (612) 436-1800
Facsimile: (612) 436-1801
tbecker@johnsonbecker.com
jrusch@johnsonbecker.com

Lance C. Young
*(Pending Admission Pro Hac Vice)*
MI Bar No. P51254
Jesse L. Young
*(Pending Admission Pro Hac Vice)*
MI Bar No. P72614
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076
248-355-0300
lyoung@sommerspc.com
jyoung@sommerspc.com


*Trial Counsel for Plaintiff*

Peter J. Flowers
Meyers & Flowers, L.L.C.
225 West Wacker Drive, Suite 1515 Chicago, Illinois 60606
Phone: (630) 232-6333
Email: PJF@Meyers-Flowers.com


*Local Counsel for Plaintiff*

10

## **CERTIFICATE OF SERVICE**

      I certify that on January 3, 2014, I electronically filed and caused to be served a copy of the forgoing Plaintiffs' Response to TMX Finance LLC's Motion to Dismiss, in the above-captioned matter to be filed with the Clerk of the Court and served on the parties of record, using the ECF system, which will send notification of such filing to all counsel of record.

                                                   /s/ Timothy J. Becker
                                                   Timothy J. Becker