# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DEREK TERRY, on behalf of himself, and all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>TMX FINANCE LLC, TITLEMAX OF ILLINOIS, INC., and DOES 1-10,<br><br>        Defendants. | Case No. 13 C 6156<br><br>Hon. Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff's Motion for Conditional Class Certification. For the reasons stated herein, the Motion is granted.

## I. BACKGROUND

Plaintiff Derek Terry brings this putative class action to remedy alleged violations of the overtime provisions of the Fair Labor Standards Act ("FLSA"). Plaintiff was employed by Defendant TitleMax of Illinois as a General Manager in Training, or GMIT. As alleged in the Complaint, TitleMax originates and services automobile title loans by lending money secured by a lien on the customer's automobile. Defendant TMX Finance LLC owns TitleMax of Illinois as well as several other TitleMax subsidiaries located in other states, such as TitleMax of Georgia, TitleMax of Texas, and others. Though TMX Finance calls itself a holding company,

Plaintiff alleges that TMX Finance controlled his employment and participated in the alleged FLSA violations.

Since the Complaint was filed, several other plaintiffs have opted-in to this case. Some of them worked as GMITs for TitleMax of Illinois, and others have worked for TitleMax subsidiaries in other states. Plaintiff seeks to represent a class of current and former GMITs who were classified improperly as salaried exempt employees prior to January 2013, when Defendants changed their compensation structure and policies. He asks the Court to certify conditionally a nationwide collective action for unpaid overtime wages, which would require Defendants to produce the names of all potential class members and provide for Court-supervised notice to the potential class members.

## II. JURISDICTION

Defendant argues that because this Court is exercising specific personal jurisdiction over TMX Finance, the case against TMX Finance must be limited to its alleged activity within Illinois. Though TMX Finance devoted only six lines of text to this argument and did not cite a single case, the Court sees fit to address it.

A court may exercise specific personal jurisdiction over a defendant only if "the defendant has purposefully directed his activities at the residents of the forum . . . and the litigation results from alleged injuries that arise out of or relate to those

activities." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985). In this case, it is alleged that TMX Finance engaged in a nationwide practice of underpaying its GMITs, with resulting injuries suffered in a several other states. Because the alleged misconduct is the same whether it occurred in Illinois or Alabama, the injuries sustained outside Illinois "relate to" the injuries sustained within Illinois. Thus, the Court's jurisdiction covers the full scope of TMX Finance's allegedly nationwide practice. *See also, Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, (1984) (allowing an exercise of specific personal jurisdiction where the plaintiff sought damages for injuries sustained nationwide, even though only a small portion of damages were due to defendant's alleged conduct in the forum state, because "the cause of action arises out of the very activity being conducted, in part, in [the forum state").

### III. CONDITIONAL CERTIFICATION

#### A. Legal Standard

The Fair Labor Standards Act ("FLSA") provides that a civil action may be maintained by an individual "for and in behalf of himself or themselves and other employees similarly situated," but no employee shall become a part of the class "unless he gives his consent in writing." 29 U.S.C. § 216(b). This opt-in requirement replaces the procedure prescribed by Federal Rule of Civil

Procedure 23 for ordinary class actions. *See, Acevedo v. Ace Coffee Bar, Inc.,* 248 F.R.D. 550, 553 (N.D. Ill. 2008).

In this District, FLSA collective actions proceed under a two-step process. *Russell v. Ill. Bell Telephone Co.,* 575 F.Supp.2d 930, 933 (N.D. Ill. 2008). At the first stage, the plaintiff must show that there are similarly situated employees who are potential claimants. *Id.* To meet this burden, a plaintiff must make "a modest factual showing sufficient to demonstrate that [he] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Id.* Upon such a showing, the Court may allow notice of the case to be sent to the similarly situated employees, who then have the opportunity to opt-in as plaintiffs. *Heckler v. DK Funding, LLC,* 502 F.Supp.2d 777, 779 (N.D. Ill. 2007). The second stage, in which the court determines whether "there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis," comes into play after the opt-in process has been completed. *Russell,* 575 F.Supp.2d at 933. The parties agree that the present Motion for Conditional Certification involves only the first stage.

### B. Analysis

Plaintiff advances two primary reasons why GMITs from across the country are similarly situated: (1) GMITs held the same job title and performed the same or similar job duties, and (2) all

GMITs were victims of a standardized, companywide practice. In support, Plaintiff submitted several declarations from GMITs who describe substantially similar experiences working for Defendants. All of the GMITs contend that they were employed by both TMX Finance and the TitleMax entity operating in their state. In a typical week, they were scheduled to work at least 48-50 hours. The GMITs performed similar job duties, including learning how to process transactions, learning various techniques for increasing store profitability, and learning how to interview, hire, and supervise other staff members. Defendant is alleged to have paid all GMITs in the same unlawful manner.

Perhaps in view of these similarities, Defendant TitleMax does not contest limited conditional certification for individuals who were employed as GMITs by TitleMax of Illinois. However, Defendants contest the scope of any conditional class and implore the Court to distinguish between the two Defendants, TMX Finance and its subsidiary, TitleMax of Illinois. TMX Finance argues that it is nothing more than a holding company and thus did not participate in any of the alleged FLSA violations. TitleMax, for its part, insists that any class of GMITs must be limited to GMITs from Illinois.

Both of these arguments are corollaries of Defendants' contention that TMX Finance and TitleMax are truly different entities. TMX Finance raised this point when it moved to dismiss

for lack of personal jurisdiction, but the Court denied that motion because Plaintiff had submitted written materials that showed that TMX Finance hired and paid employees, including Plaintiff, in Illinois. Plaintiff submitted an offer letter that he received that extended him an "offer of employment to join TMX Finance, LLC." ECF No. 35-6. Plaintiff's pay stubs bear a TMX Finance header. ECF No. 35-7. This evidence tends to show, as the Court found when ruling on the motion to dismiss, that TitleMax and TMX Finance were joint employers.

Other evidence indicates further that TMX Finance may have been involved in establishing employment and compensation policies for GMITs. In its Form 10-Q, attached as an exhibit to one of Plaintiff's affidavits, TMX Finance states that it generated $169 million from loan originations. ECF No. 61, Ex. 1, at 29. The Form 10-Q notes that TMX Finance "influences" its revenue and profitability using various means, such as "operational execution, information systems and proper incentives for our field-level employees." *Id.* According to the Form 10-Q, TMX Finance spent $58.9 million on salaries and related expenses in the first quarter of 2013, an increase of $13.3 million from the first quarter of 2012, which was "primarily related to operational personnel necessary to service the higher volume of loans and as a result of opening new stores." *Id.* at 30. In an email from Brian Halter, TMX Finance's Vice President of Operations, TMX Finance notified

its "DMs, GM's and GMITs" that "the company will be adjusting GM and GMIT's scheduled work week." ECF No. 61, Ex. 2, at 3. This evidence casts doubt on Defendants' contention that "TMX Finance LLC does not employ GMITs nor does it engage in the origination and servicing of loans." ECF No. 54-1 at 8.

As mentioned previously, Plaintiff's burden at this stage is to make a modest factual showing that Plaintiff and other employees were the victims of a common policy or plan that violated the law. *Russell,* 575 F.Supp.2d at 933. Plaintiff's evidence tends to show that GMITs working in multiple states were subjected to a common plan, controlled by TMX Finance, that may have violated the FLSA. Defendant's contentions regarding its status as a joint employer are better suited for summary judgment. *Larsen v. Clearchoice Mobility, Inc.,* No. 11 C 1701, 2011 WL 3047484, at *1 (N.D. Ill. July 25, 2011) ("At this stage, the court does not resolve factual disputes or decide substantive issues going to the merits.").

## IV. CONCLUSION

For the reasons stated herein, the Court grants conditional class certification for purposes of sending judicial notice and conducting discovery. The class shall be defined as "all persons employed by TitleMax as a General Manager in Training at any time in the past three years." Defendants must identify all potential opt-in plaintiffs nationwide within fourteen (14) days of the entry of this order. The parties are to confer so that they may craft a

proposed class notice that addresses Defendant's concerns, to be submitted to the Court for approval only if the parties cannot agree on appropriate language. The Court grants a ninety (90) day opt-in period and appoints Johnson Becker PLLP, Sommers Schwartz, P.C., and Meyers & Flowers, LLC as interim class counsel.

**IT IS SO ORDERED.**

                                                  Harry D. Leinenweber, Judge
                                                  United States District Court

Date:5/19/2014